## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **EMILE I. TSUMA, SR.,** | : | **3:22-cv-00067 (SVN)** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MATT COSTELLO, et al.,** | : | |
| **Defendants.** | : | **April 6, 2022** |

## <u>INITIAL REVIEW ORDER</u>

On January 13, 2022, Emile Tsuma, Sr. ("Plaintiff"), an unsentenced inmate housed at Corrigan-Radgowski Correctional Center ("Corrigan") of the Connecticut Department of Correction ("DOC"),[1] brought this action against his appointed counsel, Matt Costello, and District Attorney David Smith, Prosecutor Ralph Bustamante, and Prosecutor Sarah Steere (collectively the "Prosecutor Defendants" and with Costello the "Defendants"). ECF No. 1. Plaintiff asserts violations of his rights under the United States Constitution, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"). *Id.* at 4-33. Plaintiff has sued Defendants in their individual and official capacities and requests damages and injunctive relief. *Id.* at 32-33. For the reasons that follow, the Court hereby dismisses all claims brought through this action.

### I.      FACTUAL ALLEGATIONS

Plaintiff's complaint includes factual allegations concerning his criminal prosecutions, his DOC disciplinary hearing, his DOC disciplinary sanctions, his prior interactions with Attorney Bustamante in 2015, his parental rights and efforts to regain his children, and his mental health treatment at Whitting Hospital. The Court has reviewed all of the facts and includes only those facts relevant to Plaintiff's claims asserted against the Defendants.

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The DOC website reflects that Plaintiff is an unsentenced detainee housed at Corrigan.

For purposes of this initial review, the Court considers all of Plaintiff's allegations to be true.[2]   On January 7, 2019, Plaintiff was housed at Corrigan when he became involved in an altercation with correctional staff.   ECF No. 1 ¶¶ 1-4.   He was later taken to segregation and charged with assault on a public safety officer.   *Id.* at ¶ 5.   He was given a court date of January 21, 2019, for his arraignment.   *Id.* at ¶ 8.   At his arraignment on the charge of assault on a public safety officer, the judge and prosecutor agreed to proceed with the prosecution despite a lack of evidence to support probable cause and the existence of exculpatory video footage.   *Id.* at ¶ 16.

Plaintiff was appointed Matt Costello as defense counsel.   *Id.* at ¶ 18.   Although Plaintiff had lost his telephone privileges as a result of the disciplinary sanctions, he was able to write letters and request legal calls between January 1, 2019, through September 2019.   *Id.* at ¶ 19.   Plaintiff sent letters to both the prosecutor and Costello to explain that he had exculpatory video evidence relevant to his criminal charges.   *Id.*; *see also id.*   at ¶ 14.   Costello allegedly indicated that his investigators would speak to Plaintiff's counselor about the exculpatory video evidence.   *Id.* ¶ 19.

Costello dragged the case on by filing for continuances that were granted; he visited Plaintiff occasionally and told Plaintiff that the case against him was weak, although District Attorney Smith wanted to have Plaintiff serve three and a half years for the assault.   *Id.* at ¶ 20.   Plaintiff explained that District Attorney Smith was upset that Plaintiff had previously had a case dismissed due to exculpatory evidence.   *Id.* at ¶ 21.

Plaintiff requested Costello to file a motion for discovery and to suppress evidence so that the case against Plaintiff could be dismissed due to alleged exculpatory video evidence.   *Id.*

---

[2] *See Dehany v. Chagnon*, No. 3:17-cv-00308 (JAM), 2017 WL 2661624, at *3 (D. Conn. June 20, 2017) (for purposes of Section 1915A review, "[t]he Court must accept as true all factual matters alleged in a complaint").

Costello claimed that there was no such video evidence and that the state had provided him with all of the evidence.  *Id.* at ¶ 22.  Plaintiff informed Costello that the prison had "maybe" not provided all of the evidence since the video would show they are covering up the false charges against Plaintiff.  *Id.*  Costello responded that the prison would not do that.  *Id.*

Between January 7 and September 19, 2019, Plaintiff called the court to follow up on the exculpatory evidence that was mailed to the New London Superior Court.  *Id.* at ¶ 23.  During one of these calls, Plaintiff spoke with Attorney Bustamante about whether he had evidence that showed Plaintiff's innocence.  *Id.*  Attorney Bustamante attempted to clarify who he was speaking to, but Plaintiff refused to provide that information.  *Id.*  Instead, Plaintiff told Attorney Bustamante that he needed to abide by the law.  *Id.*  Attorney Bustamante then stated that if he was speaking to an inmate, any crime Plaintiff believed occurred needed to be reported to the prison counselor.  *Id.*  Eventually, Plaintiff revealed his identity and that he had mailed Attorney Bustamante exculpatory evidence.  *Id.*  Upon hearing this, Attorney Bustamante became angered and denied receiving such evidence.  *Id.*

At some time thereafter, though it is unclear exactly when, Plaintiff filed grievances against District Attorney Smith, Attorney Bustamante, and Attorney Costello.  *Id.* ¶ 25.  As a result of filing these grievances, the prosecutors wanted Plaintiff to serve three and a half years for a crime he had not committed.  *Id.* at ¶¶ 25, 26.  Plaintiff rejected the plea offer to serve three and half years, and instead had Costello file a Speedy Trial Act motion.  *Id.* at ¶ 26.  Despite filing the speedy trial motion, Costello failed to file for a probable cause hearing and a motion to suppress, and had failed to discover the video evidence.  *Id.* at ¶¶ 26, 29.

After the Speedy Trial Act motion was granted, Costello, Plaintiff, and Attorney Steere

3

appeared in court to pick jurors.   *Id.* at ¶ 30.   Both sides presented their evidence and case to the jurors.   *Id.*   Attorney Steere called four witnesses, including Kevin Gaudet, who testified that Plaintiff assaulted him.   *Id.* at ¶ 31.   Gaudet was allegedly "out to get Plaintiff" and was harassing him for filing grievances against him and other officers.   *Id.*

During Costello's examination of Gaudet, Gaudet admitted that he was assaulted but did not have to see medical staff, did not report any injuries, and in fact, had no injuries.   *Id.* at ¶ 32. However, Costello made no effort to object when Gaudet "attempted" to insult Plaintiff's "babymother[.]"   *Id.* at ¶ 33.   Costello also told Plaintiff that he should relax and keep his anger under control after Plaintiff questioned why he had not objected to the witnesses' statements.   *Id.*

Costello called Plaintiff's witnesses, who testified that Plaintiff had never hit anyone but instead was himself being attacked.   *Id.* at ¶ 34.   Counselor Jones responded to Costello's questions about his advisor report by stating, "I don't recall."   *Id.* at ¶ 35.

Plaintiff provided testimony about his "account" of the incident during questioning by Attorney Steere.   *Id.* at ¶ 36.   After both parties rested, Plaintiff was placed in a holding cell. *Id.* at ¶ 38.   After thirty minutes of deliberations, Plaintiff was found not guilty.   *Id.*   It had taken the state and Costello nine and a half months to bring his case to trial.   *Id.*

Costello informed Plaintiff that Attorney Steere wanted to release him.   *Id.* at ¶ 39. Plaintiff informed Costello that he would be filing a lawsuit; Plaintiff asked him why Attorney Steere had not dismissed the charges based on the evidence that Plaintiff had mailed to the prosecutor's Office.   *Id.* at ¶ 40.   Plaintiff was incarcerated for nine months even though all parties knew about the exculpatory evidence and failed to acknowledge it because it would expose the cover up of Gaudet's criminal intent.   *Id.* at ¶ 41.

When Plaintiff returned home, he discovered that his father had died in February while Plaintiff was in the Restrictive Housing Unit ("RHU").   *Id.* at ¶ 42.   Plaintiff also tried to have his children returned to him but received no assistance in doing so.   *Id.* at ¶ 44.   Plaintiff later got into counseling and was prescribed medicine.   *Id.* at ¶ 45.

In February 2020, Plaintiff was arrested for being intoxicated in a store and charged with interfering with an officer, criminal trespass, and failure to comply with finger printing.[3]   *Id.* at ¶ 46.   Plaintiff was also arrested on February 14, 2020, for criminal mischief because he broke a ceiling tile while attempting suicide in a Dunkin Donuts bathroom by swallowing Adderall pills.[4] *Id.* at ¶ 47.   Plaintiff was struggling with depression, anxiety, insomnia, and was upset about his time spent incarcerated and his parental rights.   *Id.* at ¶ 48.

After about nine months, Plaintiff was called into court and appointed an attorney, Sean Kelly, who filed for a mental health evaluation of Plaintiff.   *Id.* at ¶¶ 52-53.   Attorney Kelly was later replaced by Costello.   *Id.* at ¶ 53.   Plaintiff returned to prison on May 17, 2021, and contacted Costello to inform him that his parents had both passed away, that he could not see his children due to COVID-19, and that he had tried to commit suicide.   *Id.* at ¶¶ 55-56.

Between May 17 and June 14, 2021, Plaintiff saw a group of doctors who agreed that Plaintiff should be placed in Whitting Hospital due to his paranoid ideations.   *Id.* at ¶ 57.   In a

---

[3] Review of publicly-available information on the Connecticut Judicial Branch website shows that Plaintiff's criminal case for these charges is pending.   *See* Case detail for
K10K-CR20-0368088-S available at:
https://www.jud2.ct.gov/crdockets/CaseDetail.aspx?source=Pending&Key=ae4f9f3b-56ed-4bb3-aad0-8bae5f256d9c.

[4] Plaintiff's criminal case for these charges is still pending.   *See C*ase detail for docket K10K-CR20-0368197-S available at: https://www.jud2.ct.gov/crdockets/CaseDetail.aspx?source=Pending&Key=499a82cb-41a2-461c-8edd-ecd3527735c2.

meeting with Attorney Bustamante, Costello and a superior court judge, Plaintiff agreed that he would go to Whitting for a sixty-day evaluation and treatment.   *Id.* at ¶ 59.

While he was at Whitting, Plaintiff attempted to contact Costello for advice about taking medications that were offered at Whitting, but Costello swore at him and had "attitude."   *Id.* at ¶ 63.   Later, when Plaintiff tried to contact him after being assaulted by a patient at Whitting, Costello would not answer his telephone calls.   *Id.* at ¶ 64.   Plaintiff's brother was later able to reach Costello.   *Id.*

Plaintiff was informed that he would not receive further services after being found competent because he was not taking any medication.   *Id.* at ¶ 65.   Plaintiff did not understand that he would be excluded from the care he needed and be returned to prison if he did not take the medication at Whitting.   *Id.* at ¶ 66.

On August 18, 2021, Plaintiff was found competent and transferred to prison.   *Id.* at ¶ 67.   A unit manager informed Plaintiff that his attorney could use his good report at Whitting as an argument for a bond reduction and that his time at Whitting could count as time served.   *Id.* at ¶ 67.   After Plaintiff informed Costello about this information, he hung up the telephone, claiming to be in court.   *Id.* at ¶ 68.

During his court appearance on August 18, 2021, Plaintiff was informed that he could file for a bond reduction before his next appearance on October 22, 2021.   *Id.* at ¶ 69.   Plaintiff was unable to reach Costello about his bond reduction before his court appearance on October 22, 2021. *Id.* at ¶ 70.

On October 20, Plaintiff filed grievances against Costello and Attorney Bustamante.   *Id.* at ¶ 75.   The grievance against Attorney Bustamante was returned as Plaintiff had not at that time

6

identified Attorney Bustamante. *Id.* Plaintiff's grievance against Costello complained of, among other things, neglect, communication issues, conflict of interest, and diligence issues. *Id.* Costello responded to the grievance by admitting that he had "issues" with Plaintiff, but that Plaintiff also had mental illness. *Id.* Plaintiff later filed a response explaining how dealing with Costello had traumatic effects and that he would hurt himself if he had to deal with Costello again. *Id.* at ¶ 76.

On October 22, at Plaintiff's court appearance, Costello informed Plaintiff that Attorney Bustamante wanted him to serve a sentence of eight years suspended after three years with five years of probation. *Id.* at ¶ 71. Costello explained that Attorney Bustamante was "upping" the charge to burglary. *Id.* at ¶ 73. However, Costello would not permit Plaintiff to see any "paper work" about the charges, and he admitted that he had not filed for a bond hearing because "they aren't going to do it." *Id.* at ¶ 73. Plaintiff then fired Costello. *Id.* at ¶ 74.

Plaintiff remains in prison due to Attorney Bustamante and Costello's "negligent behavior or misconduct." *Id.* at ¶ 77. He has been denied the right to a bond reduction and has been incarcerated with no resolution from May 17, 2021, to January 4, 202[2], without due process as a result of Attorney Bustamante's and Costello's personal interests. *Id.* at ¶ 77.

Defendant Costello has not argued any facts about Plaintiff's "very bad history of mental health issues" and drug and alcohol problem. *Id.* at ¶ 77. Costello's only concern was what the prosecutor and judge had to say. *Id.* at ¶ 78.

## II.     LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915A, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which

relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. Nevertheless, it is well-established that *"[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

## III.    DISCUSSION

Plaintiff asserts four legal claims in his complaint.[5]   In his first claim, Plaintiff alleges that the Prosecutor Defendants "directly participated in a[n] unconstitutional act of malicious prosecution, by denying Plaintiff equal protection of the law by ignoring the fact Plaintiff provided exculpatory evidence[,] [by] withholding all evidence and offering plaintiff prison time with no supporting facts[;]" and that he had to spend 9.5 months in prison and endure a trial that resulted in a dismissal. ECF No. 1 at 29 (¶ 1).

In his second claim, Plaintiff asserts that Costello "directly participated in a[n] unconstitutional act of negligence by failing to present evidence or obtain exculpatory evidence

---

[5] In his claims, Plaintiff states that Defendants denied him equal protection of the law and violated his Fourteenth Amendment rights under "section 1 of the Fourteenth Amendment." Section one of the Fourteenth Amendment, which is the Citizenship Clause, states: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." Reading Plaintiff's allegations together, the Court construes Plaintiff's allegations as asserting denial of his right to due process and equal protection under the Fourteenth Amendment.

which forced Plaintiff to remain incarcerated for 9 1/2 months," and by "refusing to file proper motions in Plaintiff's interest." *Id.* at 30 (¶ 2). He claims that Costello thereby denied him his rights to equal protection of the law under the Fourteenth Amendment.

In his third claim, he alleges that Attorney Bustamante "directly participated in a[n] unconstitutional act of malicious prosecution, deliberate indifference, and abuse of process by threatening to give Plaintiff an excessive amount of time and trump[ed] charges despite having visual evidence of [the] incident from 02.07.20." *Id.* at 30 (¶ 3). He claims that Attorney Bustamante wanted to turn "the incident into a burglary to satisfy his malicious interest and force a sentence onto plaintiff for a crime that was never committed" in violation of Plaintiff's equal protection rights under the Fourteenth Amendment. *Id.*

Plaintiff's fourth claim asserts that Costello "directly participated in a[n] unconstitutional act of negligence" by denying Plaintiff an ability to communicate his needs, by refusing to file a motion for bond, and by failing "to create a defense in a reasonable time or even attempting to get Plaintiff into a program" for his drug and mental health issues. *Id.* at 30-31 (¶ 4). He claims that Costello thereby denied him his Eighth Amendment and Fourteenth Amendment rights.

Plaintiff seeks $33,000 in compensatory damages and $13,000 in punitive damages. ECF No. 1 at 31. Plaintiff also seeks a preliminary and permanent injunction against Attorney Bustamante to "cease his prosecutorial misconduct." *Id.* at 33. He also seeks a temporary restraining order against a Corrigan counselor who is not otherwise named in the body of the complaint, Counselor Derose, for denying him the "right to have his suit e-filed." ECF No. 1 at 32. Plaintiff claims Counselor Derose is denying him access to the courts.

A.     The Prosecutor Defendants

The Court construes Plaintiff's complaint as asserting malicious prosecution claims under § 1983 against the Prosecutor Defendants.

"Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).    In order to prove a malicious prosecution claim under Connecticut law, Plaintiff would have to establish: "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice."   *Spak v. Phillips,* 857 F.3d 458, 461 n.1 (2d Cir. 2017) (quoting *Brooks v. Sweeney,* 299 Conn. 196, 210-211 (2010)).

Prosecutors receive absolute immunity from suit under § 1983 when they engage in "advocacy conduct that is 'intimately associated with the judicial phase of the criminal process.'" *Giraldo v. Kessler,* 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (noting that prosecutorial immunity from § 1983 liability is broadly defined, and covers "virtually all acts," associated with

prosecutor's function as an advocate).[6]  "The absolute immunity accorded to government prosecutors encompasses not only their conduct during trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation, including presentation of evidence to a grand jury to initiate a prosecution ..., activities in deciding not to do so ..., and conduct of plea bargaining negotiations."  *Barrett v. United States*, 798 F.2d 565, 571-572 (2d Cir. 1986) (citations omitted).

"The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy."  *Anilao v. Spota*, No. 19-3949-CV, 2022 WL 697663, at *4 (2d Cir. Mar. 9, 2022).  As the Second Circuit explained recently, "[a] narrow limitation to the scope of absolute immunity in § 1983 actions ... exists where the defect is jurisdictional — that is, where the prosecutor acted well outside the scope of authority, rather than where the defect relates . . . to the prosecutor's motivation or the reasonableness of his official action."  *Id.* at *5.  Thus, a prosecutor's immunity "extends even to a prosecutor who 'conspir[es] to present false evidence at a criminal trial[,]' and [t]he fact that such a conspiracy is certainly not something that is *properly* within the role of a prosecutor is immaterial, because the

---

[6] Absolute immunity does not apply to a prosecutor's "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings[.]"  *Warney v. Monroe County*, 587 F.3d 113, 121 (2d Cir. 2009) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993)); *See Kalina v. Fletcher*, 522 U.S. 118, 125–27 (1997) (holding that prosecutor was not protected by absolute immunity because she was acting as an investigator when she signed a sworn affidavit attesting to the facts supporting an arrest warrant).  Here, Plaintiff's claims arise from the Prosecutor Defendants' role as advocates in furthering their prosecutorial functions.

immunity attaches to his function, not to the manner in which he performed it."   *Id.* at *4 (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)) (emphasis in original).

Plaintiff's claims for damages against the Prosecutor Defendants arise out of their "conduct in furtherance of prosecutorial functions that are intimately associated with initiating or presenting the State's case" and are thereby barred by the doctrine of prosecutorial immunity.   Specifically, all of Plaintiff's claims against the Prosecutor Defendants revolve around the fact that he was improperly charged with a crime he did not commit and that the prosecutor improperly withheld "all evidence and offering Plaintiff prison time with no supporting facts."   *See* ECF No. 1 at 29, ¶ 1.   Taking these allegations as true, the Prosecutor Defendants are absolutely immune from these actions, as each of these actions were taken in furtherance of prosecutorial functions.   *See Staton v. Holzbach,* No. 3:20-CV-631 (SRU), 2020 WL 6119382, at *3 (D. Conn. Oct. 16, 2020) (prosecutor is absolutely immune for decision on whether to pursue or dismiss charges); *Hill*, 45 F. 3d at 662 (prosecutor was entitled to absolute immunity for claim that he withheld exculpatory evidence).   Because there are no facts to suggest that any of the Prosecutor Defendants acted outside the scope of their roles in criminally prosecuting Plaintiff for the state, the claims against the Prosecutor Defendants for monetary damages are barred by absolute prosecutorial immunity and are dismissed with prejudice.

Further, the only allegations related to Defendant District Attorney Smith are that he "was upset that Plaintiff had previously got a case dismissed due to exculpatory evidence and he was out to get me."   ECF No. 1 ¶ 21.   It thus appears that Plaintiff is accusing Defendant Smith of instructing Defendant Bustamonte not to dismiss Plaintiff's case and to in fact seek a harsher sentence.   A supervisory official, however, cannot be held liable under § 1983 on a theory of

*respondeat superior*. *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020).   Therefore, Plaintiff fails to state a claim against Defendant Smith.

     B.    <u>Attorney Costello</u>

Plaintiff asserts Fourteenth Amendment and Eighth Amendment claims against appointed defense counsel Costello.   *See* ECF No. 1 ¶¶ 2, 4.   Plaintiff's section 1983 claims against Costello fail to state a claim because Costello is not a state actor for purposes of section 1983.

"Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."   *Conn v. Gabbert,* 526 U.S. 286, 290 (1999) (citing 42 U.S.C. § 1983).   A section 1983 plaintiff must show a violation of a federally protected constitutional or statutory right which was the result of state action, or action "under color of law."   *See Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994).

A court-appointed attorney "performing a lawyer's traditional functions as counsel" to a party is not a state actor under section 1983.   *Kaminski v. Semple*, 796 F. App'x 36, 39 (2d Cir. 2019) (summary order), *cert. denied*, 141 S. Ct. 434 (2020); *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997); *Barfield v. Milling*, No. 3:14-CV-914 (VAB), 2015 WL 1737671, at *4 (D. Conn. Apr. 16, 2015) (citing cases).   Likewise, an attorney who serves as a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding or by virtue of their state law license.   *Polk Cty. v. Dodson*, 454 U.S. 312, 318-19 (1981).

Accordingly, Attorney Costello is a private party.   Although private parties are not generally liable under section 1983, the Court considers whether Plaintiff may bring his claims against Costello on the basis of any alleged conduct that may be considered state action.   *See*


*United States v. International Brotherhood of Teamsters,* 941 F.2d 1292, 1295 (2d Cir.1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'").   To show that the actions of a private party may be attributable to the state, thereby making the private party subject to liability under section 1983, the plaintiff must show "(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State."  *Hogan v. A.O. Fox Mem'l Hosp.*, 346 Fed. App'x 627, 629 (2d Cir. 2009) (summary order) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)).   "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state."  *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citation and quotation omitted).

Plaintiff has not alleged facts to show that Defendant Costello engaged in conduct that could be considered fairly attributable to the state.   No allegation suggests that Costello was compelled by the State to take the actions of which Plaintiff complains; that there was a sufficiently close nexus between the State and Costello's conduct; or that the conduct consisted of activity that has traditionally been the exclusive prerogative of the State.   *See Hogan*, 346 Fed. App'x at 629.[7]

Accordingly, Plaintiff's section 1983 claims are dismissed pursuant to section 1915A as lacking "an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

---

[7] Nor can Plaintiff's allegations even generously be construed as alleging that Costello engaged in a conspiracy with state actors.   *See Storck v. Suffolk Cnty. Dep't of Soc. Servs.,* 62 F. Supp. 2d 927, 940 (E.D.N.Y.1999) (allegations of conspiracy can be neither vague nor conclusory, but must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy."); *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002). ("[C]onclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights" are insufficient.)

C.     Disability Discrimination

Plaintiff's complaint refers to a violation of his rights under the ADA and the RA, but it

fails to allege violation of the ADA or RA under his legal claims.   See ECF No. 1 at 4 ¶ 1; *see id.*

at 29-31.

Title II of the ADA "proscribes discrimination against the disabled in access to public

services." *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84–85 (2d Cir.), *corrected,* 511 F.3d

238 (2d Cir. 2004).   Title II applies to any state or local government or instrumentality of a state

or local government.  *Id.* § 12131(1).   It provides that "no qualified individual with a disability

shall, by reason of such disability, be excluded from participation in or be denied the benefits of

the services, programs, or activities of a public entity, or be subjected to discrimination by any

such entity."  42 U.S.C. § 12132.

Section 504 of the RA states that "[n]o otherwise qualified individual with a disability ...

shall, solely by reason of her or his disability, be excluded from the participation in, be denied the

benefits of, or be subjected to discrimination under" any covered program or activity.  *Id.*

In order to prevail on a claim under either Title II of the ADA or § 504 of the RA, a plaintiff

"must show that 1) he is a qualified individual with a disability; 2) [the defendant] is an entity

subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [the

defendant's] services, programs, or activities [or that the defendant] otherwise discriminated

against him by reason of his disability." *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d

Cir. 2016).   Under the second and third elements of this analysis, the court must consider whether

any defendant has denied Plaintiff the opportunity to participate in or benefit from public services,

programs, or activities, or has otherwise discriminated against him," by reason of his disability

15

rather than a legitimate nondiscriminatory reason.   *See Torrez v. Semple*, 2018 WL 2303018, at *8 (D. Conn. May 21, 2018) (discussing second and third elements).

A qualified individual can base a discrimination claim on any of "three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."   *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).

It is unclear against whom Plaintiff asserts his claims of disability discrimination or what conduct plaintiff claims to constitute violations of the ADA and RA. The complaint is devoid of factual allegations plausibly suggesting that Plaintiff was unable to access public programs due to his disability, that his disability prevented him from accessing public programs, or that he was denied any accommodations so that he could access such programs.   Moreover, Plaintiff has not alleged facts suggesting that he was treated differently because of his disability.   *See Gibbs v. Doe 1-7*, No. 3:20-CV-1119 (JAM), 2020 WL 7129584, at *9 (D. Conn. Dec. 4, 2020) (dismissing ADA and RA claims because plaintiff failed to allege that "DOC discriminated against him because of his disability."); *Atkins v. Cnty. of Orange*, 251 F. Supp. 2d 1225, 1232 (S.D.N.Y. 2003) ("With no allegation of disparate treatment, no claim for discrimination under the ADA . . . lies."). Accordingly, Plaintiff's ADA and RA claims must be dismissed as not plausibly alleged.

D.    Requests for Injunctive Relief

In addition to monetary relief, Plaintiff seeks injunctive relief against the Defendants and Corrigan Counselor Derose.   ECF No. 1 at 32.

A district court has wide discretion in determining whether to grant preliminary injunctive relief, however it is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."   *See Moore v. Consolidated*

*Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005) (Sotomayor, J.).   Specifically, in order to receive either a temporary restraining order or a preliminary injunction, a movant must establish "a threat of irreparable harm" and either (1) "a probability of success on the merits" or (2) "sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in favor of the moving party." *Moore,* 409 F.3d at 510 (internal citations omitted).

For the reasons outlined above, Plaintiff has failed to show a probability of success on the merits, or sufficiently serious questions going to the merits, for any of his claims against Defendants.   As such, any request for injunctive relief against Defendants is denied.

Additionally, the Court denies the request for injunctive relief against Counselor Derose, who is not a party to this action.   Plaintiff has not named Derose as a defendant and did not state any allegations against Counselor Derose in the body of his complaint.   Rather, in the prayer for relief, Plaintiff alleges that Counselor Derose has obstructed his right to "e-file" his suit, has refused to notarize legal documents, and is denying him access to legal phone calls.   Derose's status as a non-party precludes the Court from granting the requested injunctive relief.   Except in limited circumstances not relevant here, "a Court may not order injunctive relief as to non-parties to the action." *Allen v. Brown*, No. 96-CV-1599, 1998 WL 214418, at *3 (N.D.N.Y. Apr. 28, 1998); *see Mitchell v. Cuomo*, No. 917CV0892, 2017 WL 8780773, at *6 (N.D.N.Y. Dec. 6, 2017) ("The Court has no power to enforce an injunction against individuals who are not parties to the lawsuit. . . . To the extent that Plaintiff seeks injunctive relief against . . . any persons who are not parties . . . the Court lacks subject matter jurisdiction to enjoin their actions.").   Accordingly, Plaintiff's request for injunctive relief against Derose is denied.

**IV.        CONCLUSION**

For the foregoing reasons, the Court DISMISSES the complaint in its entirety due to Plaintiff's failure to state any plausible federal claims for relief.   *See* 28 U.S.C. § 1915A.

The clerk is instructed to close this case.


**SO ORDERED** at Hartford, Connecticut, this 6th day of April, 2022.

> */s/ Sarala V. Nagala*
> SARALA V. NAGALA
> UNITED STATES DISTRICT JUDGE